## BLEECKER v. MILLER *et al.*

No. 3060.    Opinion Filed February 10, 1914.

(138 Pac. 809.)

1. PARTNERSHIP—Fictitious Name—Compliance With Statute—Right to Sue. John H. Milller and D. C. Miller, as a partnership under the firm name and style of John H. Miller Company, commenced a suit against defendant for commission; defendant answered, setting up that plaintiffs were transacting business in this state in the name of the John H. Miller, Company, and that the same is a fictitious name and designation, not showing the names of the persons interested in such partnership, and that the plaintiffs had failed to file with the clerk of the district court a certificate stating the names in full of the members of the partnership, etc., and that they had failed to publish the same, as required by sections 5023 and 5025, Comp. Laws 1909 (Rev. Laws 1910, secs. 4469 and 4471); thereafter, and ·a' long time before the day of the trial, plaintiffs complied with said statute and filed a reply in this case, setting up said facts. **Held,** to be a sufficient compliance with the statute.

2. BROKERS—Right to Commission—Performance of Services—Acceptance of Offer. Where the seller offers to take $25,000 cash for his property with April rents to his account and 10 per cent. of sale to be paid when agreement is signed, and thereafter wires his broker: "We understand you cannot sell per offer. Wire answer, urgent," to which the broker replies by wire on the same day, "Deal O. K. Letter follows," and the letter, mailed on the same day, is as follows: "My party wired me this morning from Fort Smith that everything was satisfactory, and that she would be here Thursday to close up deal. She has considerable interests in Fort Smith, and it will probably take her some few days to get her money together. She has called her money in here, and if she has no trouble it will be in by the middle of the week; however, just as soon as she reaches here deposit of $2,500.00 will be made and also contract signed. She wishes abstract sent on at once. In case she should fail to get all her money in would you accept $25,000.00 half down and balance in one year at 8 per cent. interest. She objects to turning over the April rents and feels that you should not ask this. Will the deed have to be signed by both members of your firm? I will secure deposit and have contract signed as soon as she reaches here," **held,** to be an unqualified acceptance, and the statements therein, relative to one year's time on balance and the April rents, refer to new terms, not as part of the contract, but as favors asked of the seller, to be granted or withheld at his option, and in no way invalidating the acceptance.

3. TRIAL—Refusal of Instructions Covered. Instructions examined, and those given by the court **held** to embody the law as stated in the instructions requested and refused.

Opinion of the Court.

4. **SAME—Instructions—Assumption of Fact—Undisputed Evidence.** Where a material fact is conclusively shown by undisputed evidence, then the giving of an instruction which assumes that such fact has been established is not error sufficient to justify a reversal of the judgment.

5. **BROKERS—Right to Commission—Performance of Services—Default of Principal.** Where a real estate broker furnishes a purchaser ready, willing, and able to buy upon the terms and conditions proposed by the seller, such agent has earned his commission, and if thereafter the seller refuses to comply with his contract, the agent is not required thereafter to procure or tender to the seller an enforceable contract.

(Syllabus by the Court.)

*Error from District Court, Tulsa County;*
*L. M. Poe, Judge.*

Action by John H. Miller and another, a partnership, etc., against T. Bache Bleecker. Judgment for plaintiffs, and defendant brings error. Affirmed.

*B. T. Hainer, H. M. Martin, Chas. E. Bush,* and *John Y. Murry, Jr.,* for plaintiff in error.

*Davidson & Williams,* for defendants in error.

LOOFBOURROW, J. In this opinion the plaintiff in error will be hereafter referred to as defendant, and the defendants in error as the plaintiffs. The petition of plaintiffs alleges, in substance, that plaintiffs, John H. Miller and D. C. Miller, are now, and were at the times hereinafter mentioned, a partnership doing business in the city of Tulsa, Okla., under the firm name and style of the John H. Miller Company; that at and before the institution of this suit their business was that of buying and selling real estate on commission; that defendant, on or about the 20th day of October, 1908, listed with them for sale certain real estate located in Tulsa, Okla., and agreed to pay them the reasonable commission for such sale, if they should be able to negotiate same; that said plaintiffs found a purchaser ready, willing, and able to buy the said premises at the price named by defendant, and that the said plaintiffs thereupon communicated said offer to defendant before said contract had been terminated or withdrawn; that defendant refused and failed to

carry out the contract of sale; and plaintiffs asked judgment in the sum of $650, with interest. In said petition there is set out copies of certain letters and telegrams transmitted by the parties to each other in this transaction. Defendant answered said petition, admitting that plaintiffs John H. Miller and D. C. Miller, at the time mentioned in their petition, were a partnership doing business in the city of Tulsa, Okla., under the name and style of the John H. Miller Company; defendant admitted all of the transactions referred to in the petition that were had by and between the said plaintiffs as a copartnership and the defendant, and, further answering, set up a general denial of all of the allegations contained in the petition not specifically admitted to be true, but admitting the ownership of the property and the correspondence by telegrams and letters as set up; by way of special defense defendant alleged, in substance, that plaintiffs at all times were transacting business in the state of Oklahoma under a fictitious name and designation, not showing the names of the persons interested in the partnership of such business, and that the partners had failed and neglected to file with the clerk of the district court a certificate stating the names in full of the members of the partnership, with places of residence, and that they had failed to publish the same as required by sections 5023 and 5025, Comp. Laws 1909 (Rev. Laws 1910, secs. 4469 and 4471); that the plaintiffs have failed to comply with the statute in such cases made and provided, and that they are not authorized to maintain any action on, or on account of, said alleged contract made and had in their partnership name; defendant further alleges that in said letters there was no specific acceptance of plaintiffs' offer, and that the plaintiffs' alleged purchaser objected to the terms of defendant's offer, and objected to the requirement that defendant should receive the April rent on said property; further answering, defendant alleges and says that the plaintiffs at no time accepted defendant's offer to sell the said premises until after the defendant had sold the same to other parties and had notified the plaintiffs of such sale. Thereafter, on April 8, 1911, plaintiffs filed the following reply:

"Now comes the plaintiffs and for their reply herein, avers that since the institution of this action, namely June, 1910, the plaintiffs filed with the clerk of the district court of Tulsa county, Okla., which county was and is the principal place of business of said partnership, a certificate stating the names in full of each member of the said partnership, to wit, John Hamilton Miller and Darrell Cleveland Miller, and their respective places of residence, to wit, Tulsa, Tulsa county, Okla. The plaintiffs aver that said certificate was published once a week for four consecutive weeks in the Tulsa Democrat, a daily newspaper published in the city of Tulsa, county of Tulsa, state of Oklahoma; that said certificate was published in said paper on June 23, June 30, July 7, and July 14, 1910. Wherefore, the plaintiffs pray as in their petition, original and as amended."

Under the first assignment of error the defendant contends that the partnership doing business under the name and style of the John H. Miller Company is a fictitious name or designation, not showing the names of the persons interested as partners in such business, and further contends that the filing of the statement and making the publication as alleged in the reply after the institution of the suit does not cure their failure to do so prior to the commencement of the action. In the case of *W. K. Patterson and N. H. Patterson, Partners, as the Patterson Furniture Company v. Byers,* 17 Okla. 633, 89 Pac. 1114, 10 Ann. Cas. 810, it is held that such firm name is not a fictitious one, and in support of that holding under similar statutes, the court cites *Pendleton et al. v. Cline et al.,* 85 Cal. 142, 24 Pac. 659; *McLean et al. v. Crow,* 88 Cal. 644, 26 Pac. 596; *Guiterman Bros. v. Wishon,* 21 Mont. 458, 54 Pac. 566; *Carlock et al. v. Cagnacci,* 88 Cal. 600, 26 Pac. 597; also *Zimmerman v. Erhard,* 83 N. Y. 74, 38 Am. Rep. 396, where J. Zimmerman & Co., being a partnership composed of J. Zimmerman and Mary Zimmerman, his wife, was held not a fictitious designation. But if John H. Miller Company is a fictitious name or designation, not showing the names of the persons interested as partners in such business, was not the statute fully complied with by the filing of the certificate and making the publication, as alleged in the reply? Counsel for defendant say it is not, and call our attention to *Baker v. L. C. Van Ness & Co.,* 25 Okla. 34, 105 Pac. 660. This latter case is not in

point, for the reason that when the special defense of failure to comply with sections 5023 and 5025 (4469 and 4471), *supra*, was filed, the plaintiff failed and neglected to file a reply, and, not having done so, the allegation of the new matter in the answer, charging that L. C. Van Ness & Co. was a fictitious name, and that such firm had not complied with sections 5023 and 5025 (4469 and 4471), *supra*, was uncontroverted, and such answer therefore constituted a complete defense to the action, and for that reason the judgment in favor of L. C. Van Ness & Co. was contrary to law. In *Choctaw Lumber Co. v. Gilmore*, 11 Okla. 462, 68 Pac. 733, the petition was filed October 8, 1901, and on the same day certificate required by section 5023, *supra*, was filed with the clerk of the district court, and on the same day publication commenced, and the case was tried on November 1, 1901; so that the publication for four successive weeks had not been made prior to the day of the trial, and the court dismissed the action, citing in support of its decision *Byers et al. v. Bourret*, 64 Cal. 73, 28 Pac. 61. In the latter case the court found that at the time the action was commenced plaintiffs had not filed or published the certificate of partnership required by law, but that on the 7th of December, 1882, they did so file and commence publication; that the trial was had on the 15th of December, 1882; so that in that case the four weeks' publication had not been made prior to the day of the trial.

In the case of *Nicholson et al. v. Auburn Gold M. & M. Co.*, 6 Cal. App. 547, 92 Pac. 651, involving the same statute, the petition was filed November 7, 1905; the first publication of the certificate of copartnership was on November 4, 1905, the last publication being December 2, 1905. The answer pleading this statute in abatement was filed December 19, 1905. In that case the plea in abatement was not interposed until after the publication had been completed. The court held that the plea in abatement was not good, and in concluding the opinion, said:

"Furthermore, we think the statute was sufficiently complied with though the publication was not completed before the commencement of the action."

In *Malfa et al. v. Crisp,* 52 Wash. 509, 100 Pac. 1012, under a statute similar, Frank Malfa and William Malfa, copartners as F. Malfa & Son, on September 18, 1907, commenced an action against William F. Crisp; they did not allege in their petition the compliance with the law relative to publication and filing of certificate of partnership, and Crisp demurred to the petition; his demurrer was overruled, and he answered in the case instead of standing on the demurrer; afterwards, on December 7, 1907, the plaintiffs filed the certificate required and obtained leave of the court, and pleaded such filing in a supplemental petition, which was filed December 10, 1907, long before the trial, which occurred in February, 1908. The court, in the opinion, states:

"No practical advantage could have been secured to the appellant by dismissing it (that is, sustaining the plea in abatement and dismissing the case). Had such an order been entered, the respondents could have immediately instituted, and would have successfully prosecuted, another action to foreclose the same lien. No good purpose would have been subserved by nonsuiting them, and by throwing them out of court with costs imposed, and then permitting them to return with the same cause of action. We are of the opinion that for the purpose of maintaining this action they substantially complied with the spirit of the statute by filing their certificate, and by pleading the same before trial, and before their right of action had been barred by lapse of time."

In *Sutton & Co. v. Coast Trading Co.,* 49 Wash. 694, 96 Pac. 429, Sutton & Co. entered into a contract on August 5, 1907; the certificate required by the statute was not filed until October 11, 1907. The court held that the failure to file certificate prior to making the contract did not invalidate the contract.

The statute relating to every partnership transacting business in this state under a fictitious name or designation does not confer any right upon the defendant, and the only reason that the defendant can urge such statute as a defense is for the purpose of enforcing a compliance by the plaintiff with the statutory requirement. The statute specifically provides:

"* * * That if such partners shall at any time comply with the provisions of this article, then such partners shall have the right to maintain an action in all such partnership contracts and transactions entered into prior as well as after such compliance with this article, and the disabilities heretofore imposed as partnerships by said article, for a failure to comply therewith, are hereby removed and made to conform to this section."

So that when the terms of the statute were met, the barriers theretofore existing were no more, and since the certificate was filed and publication made and pleaded long before the day of the trial, no good purpose can be served by refusing to permit the partnership to proceed in the case.

The second assignment of error is the action of the trial court in overruling the demurrer of defendant to the evidence offered by plaintiff, and, third, refusing peremptory instructions. These may be considered together. Various telegrams and letters passed between the parties, and the defendant contends that the same do not disclose an acceptance, and that there was therefore no contract, and therefore his demurrer to the evidence should have been sustained and the peremptory instruction given. These letters and telegrams are as follows:

"3-10-09. Bleecker & Simons, Greenwich Street, New York. Have Offer $25,000 cash. Wire answer at once. The John H. Miller Co."

"New York, N. Y., March 11, 1909. The John H. Miller Co., Tulsa, Okla. Accept twenty-five all cash. April rents my account, buyer assumes balance pavement assessments understood, and 10 per cent. of sale when agreement signed. Wire confirmation. Bleecker & Simons."

"The John H. Miller Co., Tulsa, Okla.—Dear Sirs: Your two telegrams of the 10th inst. were all received by the writer at the same time this morning, and we immediately wired you as follows: 'Probably close our figure today, have cabled bid Bleecker, Bermuda.' We are at this writing (3 p. m.) in receipt of a cable from him accepting the cash bid on the basis of telegram just sent you as follows: 'Accept twenty-five all cash, April rents my account, buyer assumes balance pavement assessment understood, and 10 per cent. of sale paid when agreement signed, wire confirmation.' We simply state that the matter of rents and paving assessments which are of course customary on such a sale in any event, but owing to the fact that we are re-

ceiving so many offers on this property very near the figure we have been holding it at, we want all these matters clearly understood to avoid any trouble. We therefore presume that you will confirm this by wire at once. The abstract is in the hands of Mr. C. L. Holland and we will write him to turn it over to you at once. We of course expect 10 per cent. of the sale paid down when the preliminary agreement is signed and we presume you will draw this up at once and forward draft for the amount, $2,500.00. We might add that we would not have considered shading our price except for the fact that you have made us an out and out cash offer and if it should develop that any of this amount is to be retained on mortgage, the sale is off. Yours very truly, Bleecker & Simons."

"New York, N. Y., Mar. 13, 09. J. H. Miller Co., Tulsa, Okla. We understand you cannot sell per offer. Wire answer, urgent. Bleecker & Simons."

"The John H. Miller Co., Tulsa, Okla.—Dear Sirs: As we have not heard from you we presume that your so-called 'cash offer' has not materialized and we therefore wired you this morning: 'We understand you cannot sell per offer, wire answer, urgent.' We certainly took it for granted that the offer made you was actually in hand and went to considerable trouble and expense in submitting it to Mr. Bleecker in Bermuda, as wired and written you. We will probably sell the property in response to an equally favorable offer received today, and do not consider ourselves bound by any telegrams or letters sent to you should you decide to accept this offer a little later. Yours very truly, Bleecker & Simons."

"Bleecker & Simons, 236 Greenwich St., New York. Deal O. K. Letter follows. The John H. Miller Co."

"Bleecker & Simons, New York, N. Y.—Gentlemen: My party wired me this morning from Fort Smith that everything was satisfactory, and that she would be here Thursday to close up deal. She has considerable interests in Fort Smith, and it will probably take some few days to get her money together. She has called her money in here, and if she has no trouble it will be in by the middle of the week; however, just as soon as she reaches here deposit of $2,500.00 will be made and also contract signed. She wishes abstract sent on at once. In case she should fail to get all her money in would you accept $25,000.00 half down and balance in one year at 8 per cent. interest. She objects to turning over the April rents and feels that you should not ask this. Will the deed have to be signed by both members of your firm? I will secure deposit and have contract signed as

soon as she reaches here. Yours very truly, The John H. Miller Co. John H. Miller."

It is quite clear from the letters and telegrams that defendant was offered $25,000 cash for the property; that he, by letter of March 11th, accepted the $25,000 cash offer, but with further conditions that he should receive the rents for April, that the buyer assume the balance of the pavement assessments, and that 10 per cent. of the sale, or $2,500, should be paid down when the agreement was signed. On March 13, 1909, the defendant, being no doubt anxious to close the sale, sent the message:

"We understand you cannot sell per offer. Wire answer, urgent."

On the same day, in reply, the plaintiffs sent this message:

"Bleecker & Simons, 236 Greenwich St., New York. Deal O. K. Letter follows."

The term "O. K." has a well-defined meaning, and signifies "All right; consent or assent to a proposition." See 21 Am. & Eng. Enc. of L. 915, and authorities therein cited. This telegram, giving the terms their ordinary meaning, meant: "The deal is all right, and that letter would follow with the details." The offer to sell had not been withdrawn. The letter above set out, dated March 13, 1909, written by the plaintiffs, in the first sentence, states:

"My party wired me this morning from Fort Smith that everything was satisfactory and that she would be here Thursday to close up deal."

This sufficiently informed the defendant that the purchaser had agreed to the terms and accepted the offer. Then follows:

"She has considerable interests in Fort Smith, and it will probably take some few days to get her money together. She has called her money in here, and if she has no trouble it will be in by the middle of the week."

This is no more than an explanation of her circumstances and an assurance of her ability to pay.

"However, just as soon as she reaches here deposit of $2,500.00 will be made and also contract signed. She wishes abstract sent on at once."

This would seem to leave no doubt as to the fact of the offer having been accepted.

"In case she should fail to get all her money in would you accept $25,000.00 half down and balance in one year at 8 per cent interest."

This is a mere inquiry or request, and contains no suggestions that if this request is not granted she will not take the property on the terms agreed to. "She objects to turning over the April rents and feels that you should not ask this"; in other words, while she has accepted and agreed to the terms, she feels that she ought to have the rents, but her feelings in the matter so expressed do not indicate that she has not fully accepted the terms. This suggestion is then followed with the inquiry, "Will the deed have to be signed by both members of your firm?" further showing the intention to execute the contract. Then the final sentence, "I will secure deposit and have contract signed as soon as she reaches here," showing that in the mind of the writer the deal is already closed.

Mr. Page on Contracts, vol. 1, p. 79, states:

"An acceptance may refer to new terms, not as part of the contract, but as favors asked of the party offering, to be granted or withheld at his option. Such new terms do not, of course, invalidate the acceptance."

In *Phillips, Guardian, v. Moor,* 71 Me. 78, it is held:

"Where the acceptance by the vendor of an offer for a lot of hay is absolute and unqualified, the expression of a hope by him that the vendee will pay a greater sum for it when hauled, does not vary the contract."

In *Culton v. Gilchrist,* 92 Iowa, 718, 61 N. W. 384, Culton, being the owner of certain land, received a letter from Gilchrist as follows:

"In answer to your proposition to lease or sell, I will give you two hundred dollars per year for five years, or will give you twenty-five dollars per acre for the place, in yearly payments of five hundred dollars per year at 6% interest until paid. * * *"

To this Culton replied:

"I will accept your offer to lease to you at two hundred dollars per year for three or five years as you choose. * * *"

Gilchrist's reply:

"Yours of the 17th at hand and would say you can make out lease for place for five years at two hundred dollars per year. * * * Mr. Culton, the reason I ask for the place for five years is I would like to put a small cookroom at the south side. * * * "

The court said:

"Now, it seems to us that all that is said about this cook-room * * * ' is a mere request, which plaintiff might comply with or not at his election. The acceptance was complete and absolute, and depended in no way upon the matter relating to this cookroom."

In *Ferrier v. Storer,* 63 Iowa, 484, 19 N. W. 288, 50 Am. Rep. 752, Ferrier had in his possession money belonging to defendant, and wrote defendant:

"I want to say to you if you was coming out here in the fall, I will use your money until you come and give you 10% for it."

The defendant answered:

"You can use it [the money] * * * on your own terms mentioned in your last."

*Held,* that defendant's letter was an acceptance of the plaintiff's proposition, the words, "If you was coming out here in the fall," not being used to express a condition on which plaintiff would keep the money, but rather as a reason why he made the proposition.

In *Eckert v. Schoch,* 155 Pa. 530, 26 Atl. 654, defendant wrote the plaintiff that if he would pay a stated price for wheat of a certain grade he would send him a sample, and plaintiff telegraphed that if the stock was good he would take five cars at the price named. On the same day he telegraphed the defendant to send him five cars, and also wrote a letter that he confirmed the purchase of that amount. *Held* to constitute a contract for the sale and delivery of five cars of wheat at the price named.

In *Simpson v. Hughes,* 66 L. J. Ch. N. S. 143, 334, the defendant was owner of the Wray estate, occupied by the plaintiff, Simpson; the agent for defendant wrote to plaintiff as follows:

"Mr. Hughes has received an offer for the Wray of 1,700 £., which he has refused. He will take 2,000 £. Are you disposed to purchase at that price? You will please regard this matter as private and let me have an immediate answer."

Upon receiving this letter plaintiff replied by letter as follows:

"Dear Sir: I had not wished to give so much, but have decided to accept Mr. Hughes' offer and will give you the 2,000 £. he asks for the freehold of the Wray property. I would like to know from what time Mr. Hughes wishes the purchase to date. The amount of your check for the rent is ———. You do not mention fences, but I would be obliged if they may be seen to at once, as they really need attention."

No reply was made to this letter. *Held,* that the letter of the plaintiff was a complete acceptance of the offer, and that the inquiry as to the time from which the purchase should date, or as to the fences, was not a new term preventing the letter from forming a binding contract.

The refusal of the court to give instructions Nos. 3 and 6, requested by defendant, and the granting on his own motion of instruction No. 11, are assigned as error. We are of the opinion that the instructions given by the court properly state the law, and cover the law as requested by defendant, although not in the same language.

Instruction No. 11, given by the court, is as follows:

"Gentlemen of the jury, if you should find the issues in this case in favor of the plaintiffs, the plaintiffs would be entitled to recover the principal amount sued for, together with 6 per cent. interest thereon from March 13, 1909, to date."

It is contended by the defendant that the court in this instruction invaded the province of the jury, in that the court, by this instruction, told the jury if the verdict should be in favor of the plaintiffs that it must be for the entire amount sued for, to wit, $650, with 6 per cent. interest, etc. While the general denial of defendant's answer sufficiently presented an issue as to the value of the services, the plaintiff John H. Miller and witnesses Pettus and Rose each testified that the customary rate of commission on the sale of real estate in Tulsa at that time was 5 per cent. for the first thousand dollars and 2½ per cent. on all

over a thousand dollars, and no witnesses testified to the contrary. We do not believe that the substantial rights of the defendant were affected by the giving of instruction No. 11. It has been repeatedly held that a judgment would not be reversed on account of errors committed upon the trial which do not affect the substantial rights of the party appealing. See *Martin v. C., R. I. & P.,* 7 Okla. 452, 54 Pac. 696; *Alton-Dawson Mercantile Co. v. Staton,* 19 Okla. 252, 91 Pac. 892; *Purcell Wholesale Grocery Co. v. Bryant,* 6 Ind. T. 78, 89 S. W. 662; *St. Louis & S. F. v. Rushing,* 31 Okla. 231, 120 Pac. 973.

Defendant contends that the trial court erred in giving to the jury instructions Nos. 4, 5, and 6,, for the reason that the same do not tell the jury that it is necessary for plaintiffs to have procured or tendered to defendant an enforceable contract, executed by the proposed purchaser. We do not understand that this is the law. When the defendant sold the land to another purchaser, he, by his own act, stopped the transaction, and it would have been an idle and a useless ceremony to have asked the proposed purchaser to execute a contract of purchase to the property which had already been sold to another. See *Gorman v. Hargis,* 6 Okla. 360, 50 Pac. 92; *Yoder v. Randol & Nix,* 16 Okla. 308, 83 Pac. 537, 3 L. R. A. (N. S.) 576; *Halsell v. Renfrow,* 14 Okla. 674, 78 Pac. 118, 2 Ann. Cas. 286; *Neiderlander v. Starr,* 50 Kan. 770, 33 Pac. 592. The instructions, among other things, tell the jury that it was the duty of the plaintiffs to furnish a purchaser who was ready, able, and willing to purchase the property upon the terms and conditions prescribed by the defendant. The defendant contends that this purchaser was not ready, able and willing to buy this property. That was a question of fact which was submitted to the jury under proper instructions, and there is evidence in the record tending to support the conclusions reached by the jury.

There being no error in the record sufficient to warrant a reversal, the judgment of the trial court is affirmed.

All the Justices concur.