**MAGNOLIA PETROLEUM CO. v. GALLOWAY et al.**

No. 27622. Oct. 4, 1938.

W. H. Francis, Blakeney, Wallace, Brown & Blakeney, and Clearman & Ellis, for plaintiff in error.

Moore & Royse and H. C. Ivester, for defendants in error.

RILEY, J. On August 29, 1935, J. L. Galloway, Arthur Galloway, and Rex Hawks, doing business as the White Swan Super Service Station, filed suit against the Magnolia Petroleum Company seeking damages for alleged loss of business and good will caused by adulterated gasoline furnished by the defendant. The case was tried to a jury, and verdict for plaintiff resulted. From an order overruling a motion for new trial, the defendant brings this appeal.

The parties will be referred to as they appeared below.

The defendant filed its answer January 18, 1936, and the plaintiffs filed their reply

April 14, 1936. The case came on for trial May 14, 1936.

On the day of the trial, but before the parties announced ready, defendant filed a motion to dismiss the plaintiffs' action for the reason that no certificate of partnership had been filed in the office of the district court clerk as required by sections 11662 and 11664, O. S. 1931. After the jurors had been placed under oath for their venire examination, but before the jury was impaneled and sworn, the defendant offered testimony of the court clerk showing that no certificate had been filed. The action of the court in overruling the motion to dismiss is defendant's first assignment of error.

Sections 11662 and 11664, O. S. 1931, were designed to protect persons dealing with fictitious partnerships, by compelling the disclosure of the various partners' names.

In Slaten v. No. 8 Thresher Co., et al., 136 Okla. 298, 277 P. 658, in discussing defendant's failure to raise the objection that plaintiffs, a partnership, had not filed the certificate required by the above sections of the statute, this court said:

"* * * Nowhere in defendant's answer is the jurisdiction of the court to try the action attacked on that ground, and under the holding of this court, in the case of Fitch v. Braddock, 93 Okla. 78, 219 P. 703, this is a defensive matter which must be affirmatively pleaded by the defendant before he can avail himself of it."

Defendant contends that under a liberal construction of the term "pleading", its motion to dismiss is a proper method of raising this defense.

Section 197, O. S. 1931, 12 Okla. St. Ann. sec. 263, provides:

"The only pleadings allowed are:

"First. The petition by the plaintiff.

"Second. The answer or demurrer of the defendant.

"Third. The demurrer or reply by the plaintiff.

"Fourth. The demurrer by the defendant to the reply of the plaintiff."

Defendant attempted to raise an issue of fact. Section 348, O. S. 1931, 12 Okla. St. Ann. sec. 554, provides:

"An issue of fact arises: First, upon a material allegation in the petition, controverted by the answer; or, second, upon new matter in the answer, controverted by the reply; or third, upon new matter in the reply, which shall be considered as controverted by the defendant without further pleading."

Under the provisions of sections 197 and 348, supra, and the holding in Slaten v. No. 8 Thresher Co. et al., supra, the proper pleading to raise an affirmative defense, such as is under consideration here, is the answer or some amendment thereto. Admittedly defendant did not raise it in the answer.

In reaching the above conclusion we are not unmindful of the holding in Farquharson v. Wadkins, 54 Okla. 450, 153 P. 1160, wherein the question here involved was raised by a motion to dismiss. The method employed seems not to have been questioned, and apparently sections 197 and 348, O. S. 1931, were not called to the attention of the court. Both Slaten v. No. 8 Thresher Co. and Fitch v. Braddock, supra, were written subsequent to the Farquharson Case and harmonize with the provisions of the sections of the statutes last cited above. Farquharson v. Wadkins is in conflict therewith and is hereby overruled.

Defendant next contends that the motion to dismiss should be treated as an amendment to the answer. This is likewise untenable. Assuming that the motion to dismiss is an amendment to the answer, the action of the trial judge in overruling the motion should be construed as a denial of the right to amend the answer.

It is within the sound discretion of the trial court to grant or refuse amendments to pleadings, and in the absence of an abuse of this discretion the rulings of the trial court will not be disturbed. This rule has been so frequently pronounced by this court that the citation of authority is unnecessary. It cannot be said from the record that the rights of the defendant were prejudiced by the action of the trial court. It should be noted that the petition was filed over four months before the answer was filed, over seven and a half months before the reply was filed, and over eight and a half months before the trial. Throughout this entire time the records of the court clerk's office were available for inspection by the defendant. Defendant's delay in raising this affirmative defense until the day of trial strongly suggests a deliberate plan to force a delay in the trial by raising a new and different defense. While the policy of the courts in Oklahoma is to permit liberal amendments of the pleadings, it is also their policy to prevent delay of the trial by belated amendment whereby the cause of action or its defense is materially changed. Particularly is this true where, as in the instant case, the party seeking the amendment has had ample opportunity prior to the date of the trial to seek the fruits of the amendment.

To delay the trial under the facts of this case by permitting such an amendment would but add substance to the not unfounded belief of many laymen that court procedure is encumbered with unnecessary delay.

Plaintiffs alleged that defendant contracted to furnish gasoline and oil of standard grade; that plaintiffs enjoyed an average business of $991.75 per month during November and December, 1934, and January, 1935; that about the first of February, 1935, the defendant, with intent to damage the plaintiffs, furnished adulterated gasoline; that plaintiffs sold the same to their customers and by reason thereof suffered a loss of business during the months of March to July, 1935, inclusive, in the total amount of $1,623.10; that because of the sale of such adulterated gasoline to their patrons they had suffered a loss of reputation, loss of anticipated profits, and damage to good will in the amount of $1,000.

Defendant denied furnishing adulterated gasoline to plaintiffs; alleged that if plaintiffs purchased adulterated gasoline, it was purchased from some other person and was adulterated by some other person; that the damages alleged were speculative, uncertain, and too remote to be ascertained.

The case was tried to a jury, and verdict returned in the amount of $596.

The evidence discloses that the plaintiffs began operating the White Swan Service Station about November 7, 1934, at which time they sold Cities Service products. On November 15, 1934, they began selling products of the defendant. During the remainder of November, December, and January, a good business attended the venture. About the last of January some customers complained of the gasoline, and a test by the State Gasoline Inspector showed that in the pump from which most of the gasoline was sold, the gasoline tested about 51, while the other two pumps tested according to specifications. Other customers complained from time to time, and in May the plaintiffs had the gasoline tested in a complaining customer's car and the gasoline in the tank from which the customer had purchased the gasoline. Both tested approximately 51. The local wholesale agent of the defendant removed the gasoline from the tank and refilled it with gasoline which tested according to specifications. During the latter part of July, 1935, plaintiffs quit selling defendant's gasoline and began using Phillips 66.

About the latter part of January and during February the business of the plaintiffs

decreased and did not increase during the succeeding spring and summer months, when the filling station business customarily enjoys a seasonal improvement.

The evidence discloses that many customers quit trading with the plaintiffs because of the inferior type of gasoline sold through their station. One of the plaintiffs testified that when he made personal calls on some of their former customers they informed him they quit because the station sold kerosene for gasoline.

From the testimony it is obvious plaintiffs suffered loss of profits and injury to their good will whereby they were damaged; however, it is one thing to show that a person was damaged, and quite another thing to show the extent and amount of the damage. Plaintiffs introduced their books in evidence, and the bookkeeper was permitted to testify concerning the disclosures therein. The witness computed the gross sales for each month by adding the total sales and deducting therefrom the cost of the gasoline and oils, accessories, grease, tire patching, etc. The average gross profits were then taken for the months of December, 1934, and January, 1935. The loss of gross sales for each succeeding month up to and including July, 1935, was derived by deducting from the average gross profits for December and January, 1935, the total gross sales of each month. The total loss of gross sales after January, 1935, was estimated by totaling these monthly losses, and amounted to $596.-91.

Plaintiffs did not attempt to show what their net profits were for the months of December, 1934, and January, 1935. It does not appear from the record what capital was invested in the enterprise at its inception, nor what remained at the termination of the contract with Magnolia, nor was the value of the capital remaining at the time the plaintiffs sold the business in March, 1936, shown. Without further comment upon the sufficiency of the evidence to show a loss of profits or good will, it might be well to state that if the capital plaintiffs originally put into the business and the net profits for the months of December and January were dissipated by plaintiffs in an effort to continue the operation of their business during the spring months when business was decreased by the act of the defendant furnishing adulterated and diluted gasoline, they clearly would be entitled to compensation therefor if properly proved.

Instructions No. 4 and No. 5 are as follows:

"You are instructed that gasoline may not be sold for power purposes which has not been tested or which has been diluted or adulterated to where it is not suitable for the purpose for which purchased and any person, firm or corporation who shall sell any gasoline for power purposes which has not been tested or which is not suitable for the purpose for which it is sold and the purposes for which it was purchased, is civilly liable for resulting damages."

"You are instructed that if you find and believe from a fair preponderance of the evidence, facts and circumstances in this case that on or about the early part of January, 1935, and thereafter, the defendant sold to the plaintiffs gasoline which was intended for resale for power purposes and which had not been tested or which was not suitable for the purpose for which it was sold and the purpose for which it was purchased; that plaintiff sold said gasoline to customers; that such gasoline was unsatisfactory to said customers; that by reason thereof said customers quit trading with plaintiffs and that plaintiffs suffered damages in loss of profits and business by reason thereof, then you should find for the plaintiffs. If you do not so find, then you should find for defendant."

Defendant contends that it was error for the court to submit to the jury instructions concerning gasoline which "had not been tested" because the evidence does not show the defendant sold "untested" gasoline. An examination of the record discloses that it is neither alleged in the pleadings nor shown by the evidence that the defendant sold gasoline to the plaintiffs which had not been tested. The above instructions would permit the jury to find for the plaintiffs because the defendant furnished untested gasoline. This was error. In White v. Oliver, 32 Okla. 479, 122 P. 156, par. 5 of the syllabus reads:

"It is error to give an instruction presenting to the jury a theory of the case, when there is no evidence to support the theory."

By instruction No. 6, the court charged the jury as follows:

"You are instructed that in case you find for the plaintiffs under the evidence and these instructions, then you should assess the amount of plaintiff's recovery against the defendant, in any sum you may find to be a reasonable sum for the damage, if any, by reason of loss of business, if any, and damage to the good will, if any, to plaintiffs' business. In case you find for the defendant you will simply say 'for the defendant'."

This instruction is insufficient for the reason that it does not adequately define good will nor does it prescribe any method where-

by the jury could determine the value thereof, if any.

The case is reversed and remanded for a new trial.

OSBORN, C. J., and PHELPS, GIBSON, and DAVISON, JJ., concur.