## STINCHCOMB v. HARRIS et al.

No. 30578. March 9, 1943.

*134 P. 2d 990.*

A. E. Pearson and V. E. Stinchcomb, both of Oklahoma City, for plaintiff in error.

Rainey, Flynn, Green & Anderson, of Oklahoma City, for defendants in error.

PER CURIAM. This action was instituted on June 5, 1940, by the defendants in error, hereinafter referred to as plaintiffs, against the plaintiff in error, hereinafter referred to as defendant, to recover advancements and commissions alleged to be due under a contract between broker and customer.

In their petition plaintiffs alleged, in substance, that they were general partners conducting a brokerage business and engaged in buying and selling stocks, bonds, grain, and commodities on the securities and commodities exchanges for the accounts of their customers, and that defendant had been a customer of plaintiffs for several years and had engaged their services as brokers to buy and sell grain for him on the open market, and in order to do this had carried a marginal account with plaintiffs under the terms of a written contract known as a customer's agreement and which was subject to the rules and regulations of the Chicago Board of Trade and which required all customers to maintain a margin of ten cents per bushel on all wheat bought for future delivery; that on March 21, 1940, defendant had a balance in his account with plaintiffs in the sum of $3,839.09, and at that time directed plaintiffs to purchase for his account 5,000 bushels of wheat at the market, which plaintiffs did; that thereafter on March 28, 1940, defendant withdrew the sum of $3,000 in cash from his account with plaintiffs and thereafter directed plaintiffs to make further purchases of July wheat for his account, which plaintiffs did to the extent of

6,000 bushels, making total purchases for account of defendant of 11,000 bushels of wheat; that May 10, 1940, the market declined to such an extent as to make it necessary for plaintiffs to call upon defendant to furnish additional margin, which defendant did in the amount of $325, and that thereafter, on May 14, 1940, the market declined further so that the margin which defendant had on deposit with plaintiffs was less than ten cents per bushel; that thereupon, pursuant to the contract between the parties which required defendant to maintain a margin of ten cents per bushel on all wheat purchased and held for his account, plaintiffs called upon the defendant to deposit additional margin as he had contracted to do. The defendant first promised to do so, but later refused, and that thereupon plaintiffs, as authorized by the terms of the contract between the parties and the rules and regulations of the Chicago Board of Trade, sold the wheat contracts which they had theretofore purchased for the defendant on the Chicago Exchange at the then prevailing market and as a result had to sell at a price which, after applying the margins which had been deposited by defendant with plaintiffs, resulted in a loss to the plaintiffs in the sum of $993.41, for which sum, together with a commission of $33.50, or a total of $1,026.91, plaintiffs prayed judgment. A copy of the customer's contract referred to was attached to and made a part of the petition. After motion to make more definite and certain and demurrers had been overruled, defendant filed an amended answer, which in addition to a general denial alleged as a plea in abatement the failure of plaintiffs to file certificate and to publish the names and addresses of the members of the partnership in the manner required of fictitious partnerships. The plaintiffs thereupon obtained an extension of time in which to reply and in the interim took steps to comply with the statutory requirements, and on January 6, 1941, filed a reply wherein they alleged that they had fully complied with the require-

ments of the statute and were entitled to maintain the action. Upon the issues thus framed the cause came on for trial on March 17, 1941. The cause was first tried to the court upon the plea in abatement, and when this was overruled, then to a jury upon the merits, and resulted in a verdict in favor of plaintiffs for the full amount alleged to be due them.

As grounds for reversal of the judgment, the defendant submits the following propositions:

"1. The plaintiffs were not entitled to bring or maintain this action for the reason that they have failed to comply with the statutes of this state relating to fictitious partnerships.

"2. The action should have been dismissed for the reason that plaintiff's petition did not allege nor did they prove upon the trial that the chose in action or account receivable sued upon was assessed for taxation and the tax paid under the provisions of the intangible personal property tax laws of this state, nor was any allegation made or facts proved to show that the same was not subject to such tax.

"3. The court erred in overruling motion to make more definite and certain; and, the court erred in overruling demurrer to petition.

"4. The court erred in overruling defendant's demurrer to plaintiff's evidence, and in overruling motion for a directed verdict, for the reason that plaintiffs failed to prove any cause of action against defendant.

"5. The court erred in giving instruction No. 8 to the jury."

Under the first proposition defendant urges the failure of plaintiffs to comply with the requirements of 54 O. S. 1941 §§ 81 and 83 prior to the institution of their action was fatal thereto, and in support of the contention so made cites Choctaw Lumber Co. v. Gilmore, 11 Okla. 462, 68 P. 733; Patterson v. Byers, 17 Okla. 633, 89 P. 1114; Baker v. L. C. Van Ness & Co., 25 Okla. 34, 105 P. 660; Smith v. Woods, 33 Okla. 233, 124 P. 1088; Farquharson v. Wadkins, 54 Okla. 450, 153 P. 1160, and the early California case of Byers v. Bour-

ret, 28 P. 61, and contends that since in the Byers v. Bourret Case, supra, the statute here involved was construed by the courts of California prior to its adoption by Oklahoma Territory, the distinction which was thereafter made by this court in Bleecker v. Miller, 40 Okla. 374, 138 P. 809, of said case and the other Oklahoma cases cited with the exception of Smith v. Woods, supra, will not stand examination and that for this reason the subsequent cases of Bolene Refining Co. v. Zobisch Oil Co., 98 Okla. 202, 224 P. 942, and Combs v. Langston Investment Co., 100 Okla. 21, 227 P. 94, were likewise erroneous.

We are unable to agree with the contention so advanced or to place the interpretation on the several decisions which the defendant seeks to place thereon. The purpose of the statute, supra, is to protect persons dealing with partnerships of the nature therein designated. Magnolia Pet. Co. v. Galloway, 183 Okla. 432, 83 P. 2d 174. Therefore, as said in Bleecker v. Miller, supra, where compliance with the statute was not had until after institution of the suit but before trial:

"The statute relating to every partnership transacting business in this state under a fictitious name or designation does not confer any right upon the defendant, and the only reason that the defendant can urge such statute as a defense is for the purpose of enforcing a compliance by the plaintiff with the statutory requirement. The statute specifically provides:

" ' . . . That if such partners shall at any time comply with the provisions of this article, then such partners shall have the right to maintain an action in all such partnership contracts and transactions entered into prior as well as after such compliance with this article, and the disabilities heretofore imposed as partnerships by said article, for a failure to comply therewith, are hereby removed and made to conform to this section.'

"So that when the terms of the statute were met, the barriers theretofore existing were no more, and since the certificate was filed and publication made and pleaded long before the day of the trial, no good purpose can be served by refusing to permit the partnership to proceed in the case."

The subsidiary contention of the defendant under the first proposition relative to the certificate made by the plaintiffs being insufficient by reason of failure to state the names in full of all of the members of the partnership and places of residences and to properly acknowledge the same is not tenable upon either ground. For instance, defendant contends that the act of plaintiffs in signing by their first name, initial, and surname was not sufficient. The law does not generally recognize a middle name. Maine v. Edmonds, 58 Okla. 645, 160 P. 483. In Meads v. Lasar et al., 92 Cal. 221, 28 P. 935, it was held that a certificate which states the names of the members of the partnership by initials by which they are generally known is sufficient compliance with the statute. The certificate involved here appears to have been signed and acknowledged by all of the persons named as partners. No particular form of acknowledgment is required. See Philip Fabian & Co. v. John Callahan, 56 Cal. 159.

Under the second proposition advanced by the defendant it is urged that the failure of plaintiffs to allege and prove that they had rendered the account receivable for taxation and had paid the taxes thereon required a dismissal of the action. Defendant cites a number of cases from the State of Georgia in support of this contention, none of which we deem applicable to the situation here presented. 68 O. S. 1941 § 1515 reads as follows:

"In every action or suit in any court for the collection of any bond, note, account receivable, or other intangible personal property as defined in section 1 of this act, the plaintiff must allege and prove:

"That such intangible personal property sued upon has been assessed for taxation under the provisions of this act for every tax year during which he was the owner of same, and that all taxes, together with accrued interest and penalties, assessed upon the proper-

ty for such period, have been paid; provided, that the plaintiff shall not be required to prove assessment and payment hereunder for a period of more than three (3) fiscal years prior to the time of bringing his action, nor for any period of time in which the subject of his action was not taxable under this act; and provided further, if such intangible property is not subject to such taxes he may so allege, stating the controlling facts upon which is based such allegations.

"If the petition or complaint of the plaintiff fails to make the allegations herein prescribed, or if he fails to prove facts supporting such allegations when made, the action must be dismissed upon demurrer or motion of the defendant, or by the court on its own motion."

We are of the opinion that the foregoing statute was intended to apply only to a situation wherein the property involved had been in existence for a sufficient length of time to render the same taxable. The law does not require the doing of a vain and useless act, and where property has not been in existence for a sufficient length of time to enable its owner to render the same for taxes or to pay any taxes thereon, if these allegations appear in the petition, they are in our opinion sufficient to relieve the pleader of the necessity of making the allegations set forth in the statute, supra. See Shidler v. Ross, 189 Okla. 65, 113 P. 2d 603; Heffernon v. Higdon, 189 Okla. 434, 117 P. 2d 768. Plaintiffs pleaded that the debt had not come into existence until on or about the 14th day of May, 1940, and they instituted their action on the 5th day of June, 1940. Manifestly, it would have been impossible for the plaintiffs to have either returned the property for assessment or to have paid any taxes thereon. For this reason, if for no other, we deem the second proposition of the defendant to be without merit herein.

The contention of the defendant relative to failure of the trial court to sustain his motion to make more definite and certain and his demurrer to the petition of plaintiffs is based upon the supposition had the motion to make more definite and certain been sus-

tained, then possibly the petition would have disclosed that it was seeking to enforce an illegal contract, one against public policy, and therefore be vulnerable to demurrer. It suffices to say that the court did not err in either respect.

It is next contended that defendant's demurrer to plaintiff's evidence should have been sustained. The evidence of plaintiffs, both oral and by deposition, clearly disclosed that the transactions took place as alleged in the petition, and that plaintiffs actually bought and sold the wheat as directed by the defendant, and that they sustained the loss in the amount claimed by them. It is fundamental that where the evidence of plaintiff tends to establish the allegations of the petition, a demurrer thereto is properly overruled.

It is finally contended that the court erred in giving instruction No. 8 to the jury, which reads as follows:

"Should you find from the evidence, under these instructions, that said customer's agreement, plaintiff's exhibit 3 in evidence, was executed by the defendant as contended by the plaintiffs, then and in that event your verdict shall be for the plaintiffs for the sum of $1,026.91."

The vice in this instruction is said to consist in the fact that it submits a single issue to the jury.

In an action of legal cognizance instructions given by the court must be considered as a whole, and an instruction standing alone which would seem to assume a certain state of facts is not erroneous if when considered with the other instructions it does not appear to have misled or confused the jury. The instruction involved does not appear to have misled or confused the jury in any respect.

The cause appears to have been fairly tried upon instructions free from prejudicial error, and this being the situation, the judgment is in all respects affirmed.

CORN, C. J., GIBSON, V. C. J., and OSBORN, BAYLESS, WELCH, HURST, DAVISON, and ARNOLD, JJ., concur. RILEY, J., absent.