## LONG v. UNITED STATES.

### Civ. No. 4760.

United States District Court
W. D. Oklahoma.
Jan. 23, 1951.

---

John E. Marshall, Oklahoma City, Okl., for plaintiff.

Robert E. Shelton, U. S. Atty., Oklahoma City, Okl., for defendant.

VAUGHT, Chief Judge.

The plaintiff seeks the refund of income taxes and interest in the sum of $3549.59 for the year 1944 and $2197.97 for the year 1945, together with statutory interest. The issues are simple and depend upon two questions raised:

First. Were Lee A. Long and his wife, Mable Long, business partners within the meaning of Section 181, Title 26 U.S.C.A., in the years 1944 and 1945 covered by the returns filed?

Second. Did the Commissioner of Internal Revenue err in disallowing the sum of $350 deducted by the taxpayer as travel expenses in 1944?

Title 26 U.S.C. Internal Revenue Code, Section 181 reads as follows: "Partnership not taxable.

"Individuals carrying on business in partnership shall be liable for income tax only in their individual capacity."

The evidence discloses that the plaintiff, Lee A. Long, and his wife, Mable Long, were married in 1925, and in 1944 were the parents of four children, the youngest aged ten and the oldest aged seventeen. The Longs were friends of John and Annie Galbreath who were in business together. Sometime in the early part of 1944, the Galbreaths suggested that the Longs go into business as partners in contracting work in the oil fields. The Longs were without experience in business and were without capital. Mr. Long was working at the time on a salary basis for an oil company as a subforeman for the production foreman, to which he had been advanced from his first employment as a "lease roustabout." Being without capital, the Longs were hesitant about the venture, but the Galbreaths offered to finance them in the venture provided they would conduct the business as partners. On May 6, 1944, Mrs. Long and Mrs. Galbreath consulted W. H. O'Bryan, an attorney and certified public accountant, relative to the formation of the partnership, along the line of Mrs. Long conducting the administrative affairs of such a partnership and Mr. Long handling the field work. The Longs testified that on or about May 16, 1944 they orally agreed to enter into such an arrangement and to share the profits and losses equally. The Galbreaths loaned them money to meet their payrolls, a Ford pickup truck, tools, welding equipment and other things needed to get their business started. Mrs. Long got a job at the J. C. Penney store and worked two months to help supply cash needed until the business was on its feet. When she was not engaged at the store she worked on the books, answered the telephone, did typing work, took orders, et cetera. The older daughter helped with the books for which she received a salary. The business grew rapidly and Mrs. Long quit her job at Penney's to devote her full time to the business. The Longs worked hard and long hours. The business was run for a while under the name of Lee A. Long. Mr. Long had a checking account in the bank in his name in 1940 and so maintained that account until March 17, 1945 when Mrs. Long was also authorized to draw checks upon it. Mr. Long borrowed funds in his name to be used in the business. He signed instruments concerning the partnership as "owner", and in one application for a loan at the bank, he answered "no" to a question as to whether he had a partner. The first money loaned by the Galbreaths

to the Longs amounted to $1290, on May 17, 1944. Lee A. Long filed a partnership tax return March 14, 1945, for the year 1944 which showed a net income of $14,870.09. In that return he designated the business as a partnership but did not list the names of the partners. He attached thereto a sheet identified as "data supporting federal and state income tax returns for the year ended December 31, 1944," which showed the partnership distribution as follows: "Lee A. Long, Oklahoma City, Oklahoma, $7435.05, Mabel Long, Oklahoma City, Oklahoma, $7435.04, Total $14,870.09." The same year Lee A. Long filed his individual tax return showing income from the partnership as $7435.05, and Mable L. Long filed her individual tax return for the year 1944 in which she reported her income from the partnership as $7435.04. In 1946 the same procedure was followed by the parties, which showed the net income for 1945 to be $19,405.44 and the partnership division to be $9702.72 each, for which their individual returns were filed. The government was thus informed that a partnership was claimed and the names of the partners were disclosed, nothing being concealed. The business organization at the date of the trial was designated as the "Lee A. Long Contracting Company."

The Commissioner of Internal Revenue made a deficiency assessment against the plaintiff for 1944 and 1945, taking the position there was no valid partnership between the Longs for federal tax purposes. It occurs to the court that the phrase "for federal tax purposes" is rather overworked. If this organization was a partnership under the law, it was a partnership for all purposes and there is no distinction to be drawn as between a general partnership and a partnership for federal tax purposes.

The partnership statutes of Oklahoma govern the status of the parties. Title 54 Okl.Stat.Ann. Section 1 provides: "Partnership is the association of two or more persons for the purpose of carrying on business together, and dividing its profits between them."

Let us assume that one of the Longs sued the other for an accounting, alleging they were partners, and the evidence here was the evidence in such a suit. Under the decisions of the Supreme Court of Oklahoma, the holding would have to be that a partnership between the parties was established.

In O. K. Boiler & Welding Company v. Minnetonka Lumber Company, 103 Okl. 226, 229 P. 1045, 1047, the court held: "* * * An undertaking on the part of two or more persons to combine their property or labor in the conduct of a particular line or general business, for joint profit, creates the status of a partnership. In the operation of a partnership affair, each member acts as principal for himself, and as agent for the other members in the general scope of the enterprise."

In Flowers v. Hill, 119 Okl. 275, 249 P. 704, 705, the court held, quoting from the syllabus: "A prima facie case of partnership is made out against persons associated in a particular business by evidence that they share in its profits pursuant to an agreement between them; by evidence that they have described themselves as partners; or by evidence that they are common proprietors of the business conducted for their mutual profit."

In Peters v. Fry, 173 Okl. 30, 46 P.2d 358, 360, the court held: "In determining whether or not an agreement between two or more parties constitutes a partnership, the intention is one of the elements to be determined, and this is to be gathered either from the contract, if there is a written contract, or, if oral, from the conduct of the parties. * * *"

And quoting from the syllabus: "A communion of interest in the profits, or joint ownership in the property, resulting from the union of money and skill, or money and labor, of two or more persons combined for the purpose of carrying on business, constitutes the status of partners between the parties."

In Aetna Casualty & Surety Company v. Tucker, 174 Okl. 343, 50 P.2d 339, 340, the court held: "Where a partnership is disputed, its existence in a given case is a question of fact to be determined by the

court or jury; and where such an issue is. submitted to the court and the evidence reasonably sustains the court's findings, such findings will not be disturbed by the appellate court."

When the evidence is measured by these authorities there is no difficulty in determining the status of the parties. There is no dispute about the essential elements of a partnership relation. The parties to the organization under their oaths state their relationship. The Galbreaths and Mr. O'-Bryan corroborate them. The best evidence is the sworn statement on the 1944 individual return of Lee A. Long in which he states that the organization is a partnership, and the supporting data attached showed the names of the parties participating in the profits in the partnership return of the parties. Then the 1945 returns, both individual and partnership, with supporting data, together with the fact that the profits remain in the business, support the partnership contention.

The defendant contends that various suspicious circumstances and facts are sufficient to overcome this positive evidence. One is the fact that the business was conducted in the name of Lee A. Long and he apparently dealt as an individual. The question as to the effect of the name under which an organization is conducted, so far as a partnership is concerned, does not seem to have been passed upon by the Oklahoma court. But it has been passed upon by other state courts. In 47 C.J. 736, section 147, the question of name is discussed as follows: "At common law a partnership may be validly organized, without any provision in the agreement as to the name under which it is to do business, may acquire a name by usage, or may exist without any name. In the absence of a statute to the contrary, a partnership has the right to adopt any name it may choose, * * *. The firm name may be that of an individual partner, * * *."

A case cited in the footnotes thereto in point is Daugherty v. Heckard, 189 Ill. 239, 59 N.E. 569, 571. This was a case where a paving contract was signed by an individual and the court held it was a partnership contract. Quoting therefrom:

"* * * The firm name is such as the copartners choose to adopt. It may disclose the names of all the partners or of none of them, or the name of but one of them may be used as the firm name. * * *"

The statutes of Oklahoma do not provide for the name of a partnership. However, Title 54 Okl.Stat.Ann. section 81 provides: "Except as otherwise provided in the next section, every partnership transacting business in this State under a fictitious name, or a designation not showing the names of the persons interested as partners in such business, must file with the clerk of the district court of the county or subdivision in which its principal place of business is stated, a certificate, stating the names in full of all the members of such partnership, and their places of residence, and publish the same once a week for four successive weeks, in a newspaper published in the county, if there be one, and if there be none in such county, then in a newspaper published in an adjoining county."

The effect of this section is discussed in Magnolia Petroleum Company v. Galloway, 183 Okl. 432, 83 P.2d 174, 175, wherein the court held: "The provisions of Sections 11662, and 11664, O.S.1931, 54 Okl.St.Ann. §§ 81, 83, requiring a fictitious partnership to file a certificate containing the names of the partnership members in the office of the District Court Clerk before maintaining an action as provided therein are for the protection of persons dealing with such fictitious partnerships. They are defensive in nature and unless properly pleaded may be waived by the defendant in an action brought by such a partnership which has failed to file such certificate."

The legislature thus recognized the principle and the courts of the state have confirmed the fact that in the state of Oklahoma partnerships with fictitious names are lawful institutions and may do business as such, but such organizations must file the certificate prior to bringing a suit in the courts of the state. The fact that no such certificate is on file does not destroy such a partnership and is no evidence that the organization is not a partnership.

■ Reviewing the record, the court finds no difficulty in concluding that a valid partnership between Lee A. Long and Mable Long existed at the time the returns were filed for the tax years 1944 and 1945 and properly reflected their income therefrom, and that the Commissioner was in error in making the deficiency assessment and the plaintiff is entitled to recover.

■ As to the item of $350 deducted as expenses and disallowed by the Commissioner, the mere fact that the taxpayer withdrew cash from the account and disbursed the same is not sufficient to permit a disallowance of the item. It probably was a bad practice and afforded grounds of suspicion, but suspicion and facts are different things, and a suspicion unsupported by facts does not afford grounds for arbitrary action.

Findings of fact, conclusions of law and a proper form of judgment, consistent with this opinion, may be submitted within fifteen days of this date.