### EQUITABLE LIFE ASSURANCE SOC. OF UNITED STATES v. HOME.

No. 28640.   March 28, 1939.

Bowman & Greer and Simons, McKnight,

Simons, Mitchell & McKnight, for plaintiff in error.

W. E. Crowe, for defendant in error.

WELCH, V. C. J.   The defendant in the trial court has appealed from a judgment rendered against it in favor of plaintiff, for commission earned under a broker's contract to sell certain farm lands.

Plaintiff in his petition alleges that the defendant in November, 1934, was the owner of numerous farms located in Garfield and surrounding counties, and that on said date the defendant through its agent employed the plaintiff to sell several of such farms, including the one here involved, which were at that time listed with him for that purpose.   After such allegations of employment he further alleged:

"That said plaintiff has duly performed all the conditions on his part, advertised said farm for sale and solicited prospective purchasers, and on or about the 3rd day of March, 1936, found a purchaser, to wit: Lloyd Hall, who was ready, able and willing to buy and pay for said farm the sum of $8,000, and sold the same to said purchaser at said price, but that the defendant failed, neglected and refused to close said sale and consummate the same, and failed, refused and neglected to pay the commission of $300 which is due and owing this plaintiff as agreed upon, and still refuses to pay the same."

Plaintiff's evidence was to the effect that in November, 1934, he received from the defendant's agent a list of several farms for sale.   Some of the farms were listed at a "suggested price" on which the defendant's agent must receive confirmation from defendant's home office.   On others of the farms listed, including the farm in question, a fixed or set price was placed thereon.   The said price on the farm involved herein was $8,000.   His evidence further shows that he advertised this farm, with others, for sale, and over a period of several months' time sold several farms for the defendant, all the deals being fully consummated and he having been paid his commission; that in March, 1936, he interested a Mr. Hall in the purchase of this farm, taking him out to see it several times, and at that time Mr. Hall offered to purchase the farm at a price of $7,800, which offer was communicated to defendant's agent and immediately refused; the agent saying: "No, Home, I don't think we would take $7,800 for it, we can get $8,000," and he further said, "You go back and work on the man some more and I think we can get $8,000."   Plaintiff again saw Mr. Hall and obtained an offer of $7,900, which was likewise communicated to defendant's agent and immediately refused.   Whereupon plaintiff

obtained from Mr. Hall an agreement to buy the land at the fixed price of $8,000.

This oral agreement on the part of Hall to buy was immediately communicated to the office of the defendant's agent. He was out of town, but upon his return some two or three days later, he advised plaintiff that land values had increased and that he did not know whether or not the company would sell at $8,000. The evidence further shows that defendant's agent advised his company that Mr. Hall would purchase at $8,000, and further advised it not to sell at that price. Several days thereafter the agent advised plaintiff that the defendant would not sell and would not pay his commission. The evidence is undisputed that at all times above mentioned Mr. Hall was ready, willing, and able to purchase the farm and pay $8,000 cash therefor.

The defendant's evidence was to the effect generally that its agent did not fix a set price on the farm when he listed the same with plaintiff; that the price was at all times subject to the approval of the defendant's home office, and that no price or amount was fixed on the farm until the offer was approved or accepted by defendant's home office after the same was received by it.

It is to be observed that the chief issue of fact between the parties was whether or not a fixed price was made by the defendant at which the plaintiff might sell the farm. The issues were determined in favor of the plaintiff by general verdict of the jury, and inasmuch as same is supported by competent evidence, we accept, for the purpose of this opinion, the plaintiff's version thereof.

One of the points of error raised by defendant concerns the asserted requirement of the law that a broker employed to sell real estate must procure for his employer an enforceable contract of purchase, or present to the employer a person ready, able, and willing to purchase, before the broker is entitled to his commission where the sale has not in fact been consummated. The point is made in connection with the assertion that the petition does not state a cause of action, as well as in connection with other questions discussed in the briefs.

In opposition to defendant's contention, we are cited to many decisions of this court, among which are Carson v. Vance, 35 Okla. 584, 130 P. 946. We quote paragraph 1 of the syllabus thereof:

"A real estate agent authorized to sell land for another for a stated price for a certain compensation has earned his commission when he produces a purchaser ready, willing, and financially able to purchase the land upon the terms and conditions agreed upon."

We observe that the broker was therein held to be entitled to a commission, though he did not procure a written contract and did not present the customer personally to the landowner. We note further, however, that our question here was not therein specifically passed upon.

In Bleecker v. Miller, 40 Okla. 374, 138 P. 809, we held in paragraph 5 of the syllabus as follows:

"Where a real estate broker furnished a purchaser ready, willing, and able to buy upon the terms and conditions proposed by the seller, such agent has earned his commission, and if thereafter the seller refuses to comply with his contract, the agent is not required thereafter to procure or tender to the seller an enforceable contract."

See, also, Garland v. Carpathia Pet. Co., 99 Okla. 210, 226 P. 379; Bateman v. Richards, 105 Okla. 272, 232 P. 443; American Oil & Refining Co. v. Clements, 99 Okla. 204, 225 P. 349; Pliler v. Thompson, 84 Okla. 200, 202 P. 1016; Worley v. Carroll, 110 Okla. 199, 237 P. 120; Lewk v. Abbott, 121 Okla. 157, 248 P. 605, and Koch v. Smith Co., 170 Okla. 136, 39 P.2d 18.

The defendant relies on Gilliland v. Jaynes, 36 Okla. 563, 129 P. 8; Reynolds v. Anderson, 37 Okla. 368, 132 P. 322, and Scott v. Kennedy, 152 Okla. 165, 3 P.2d 907. An examination of these and other opinions of this court, without relation to the facts of the particular case, would seem to indicate conflict in the decisions. Due consideration of the facts in the particular case, however, discloses no irreconcilable conflict.

In discussing the several opinions we find it convenient to quote from 8 Amer. Juris., page 1089, par. 173, as follows:

"If a broker's contract of employment stipulates that the broker shall not only find a customer, but shall also procure from such individual a valid agreement in writing which will take the case out of the statute of frauds, no commissions can be collected until such written agreement is furnished. According to one view, however, in the absence of any such express stipulation, the courts do not consider it necessary to a complete performance of his duties on the part of the broker that he procure a written contract between his employer and the customer, provided that the surrounding circumstances are such that the employer is in a situation to execute it himself. Some courts, however, take the view that if the contract to be negotiated is of such a character that a party thereto might successfully plead the statute of frauds when sued thereon, then performance on the part of the broker is not complete so as to entitle him to his commissions until he has secured its reduction to writing, even though the terms of his em-

ployment do not expressly require him to do so. According to still other decisions the necessity of having the contract negotiated reduced to writing, depends upon the ultimate result of the transaction. That is, the broker, at his own risk, has the option of either securing a binding written contract from his customer or of producing a person who is not only then, but at all times thereafter, ready, able and willing to carry out the deal in hand."

We observe that in some of the cases cited by the defendant it is deemed a part of the contract of the broker's employment that he will procure a written contract for his employer or present a suitable purchaser to the employer so that the employer might negotiate a contract himself. We must state here that there is no evidence or contention in this case that the broker either procured a written contract or that he personally presented the purchaser to the defendant.

We have concluded, however, that under the facts in this case the employer by unjustifiable acts on his part waived the performance of such acts on the part of the broker.

A further statement of the law generally, which we consider helpful and in point in the present case, is to be found in 8 Amer. Juris. page 1090, par. 174, as follows:

"To entitle a broker to the compensation called for by his contract of employment, he must produce a person who is ready, able, and willing both to accept and live up to the terms offered by his principal. Upon the production of such an individual, the broker is entitled to his commission notwithstanding his employer refuses to transact business with the person in question. * * *"

The employer may by his own acts justify the broker in his omission to perform certain of his duties. That this court has fully embraced and recognized the law in that respect is clearly shown by Bleecker v. Miller, supra. In that case no written or enforceable contract was obtained, nor was the purchaser personally presented to the employer. Therein the court said:

"Defendant contends that the trial court erred in giving to the jury instructions Nos. 4, 5, and 6, for the reason that the same do not tell the jury that it is necessary for plaintiffs to have procured or tendered to defendant an enforceable contract, executed by the proposed purchaser. We do not understand that this is the law. When the defendant sold the land to another purchaser, he, by his own act, stopped the transaction, and it would have been an idle and a useless ceremony to have asked the proposed purchaser to execute a contract of purchase to the property which had already been sold to another."

See Gorman v. Hargis, 6 Okla. 360, 50 P. 92; Yoder v. Randol & Nix, 16 Okla. 308, 83 P. 537, 3 L. R. A. (N. S.) 576; Halsell v. Renfrow, 14 Okla. 674, 78 P. 118, 2 Ann. Cas. 286; Neiderlander v. Starr, 50 Kan. 770, 33 P. 592.

In the Gilliland, the Reynolds, and the Scott Cases, supra, it was held to be a part of the broker's duties under his contract of employment to obtain a written contract for his employer and in each of those cases it was held that the employer had not waived the performance thereof; that under the facts the employer did nothing to prevent the broker from obtaining such contract or presenting the buyer to the employer; that the seller in those cases did nothing amounting to a refusal to comply with his contract.

Here the broker obtained a buyer ready, able, and willing to purchase upon the terms and for the price asked by the employer. The employer was not required to do anything other than that which was reasonable and customary to complete the sale. The employer here precluded the broker from the full and complete performance of his duties for the sole reason that after the broker had obtained a suitable buyer and was prepared to present him to his employer, it concluded not to sell because of increased value or other reasons unassigned. Such action was arbitrary and unjustified under the facts here. It would then have been useless to obtain a written contract from the purchaser, if in fact one could thereafter have been properly obtained. What interest would the buyer then have had in executing a written contract or personally contacting the landowner if he knew the owner would not sell? Surely the law would not require the broker to obtain such contract under the false representation that the landowner would sell. And it would seem indeed to be a harsh rule that the broker would be helpless if the buyer did not choose to execute a purported contract purely for the purpose of assisting the broker to collect his commission.

Had the defendant herein said to the plaintiff, "very well, get us an enforceable contract or bring the customer in to close the sale," and the broker had then failed to do so, defendant's authorities would be applicable and its position sound. But such is not this case. Or, as in the cases relied upon by defendant, if it had been requested by the broker to perform some act or accept some contract which it would have been justified in refusing, then it would have brought its case within the rules announced in those cases. The facts here are to the contrary.

It is further urged that the petition was insufficient because it showed that there was

an unreasonable delay between the date of listing and the date upon which the purchaser was obtained. We agree with defendant's authorities to the effect that performance must occur within a reasonable time if no specific time is embodied in the contract, but what constitutes a reasonable time generally depends upon the facts and circumstances of the case, and is usually defensive. We do not agree that the petition in this case shows unreasonable delay as a matter of law.

We conclude that the petition was sufficient as against the demurrer.

The defendant insists that the court erred in refusing to admit evidence to the effect that the land increased in value between the time of listing and the date of the transactions with Mr. Hall. In view of the fact that the theory of the defense was primarily to the effect that the same was never listed at a fixed price and not that it was withdrawn from the market because of increased value before the broker procured a purchaser, it does not appear that defendant was prejudicially affected by the court's action in that regard.

Complaint is made that the court refused to give certain requested instructions relating to whether the broker performed under the contract within a reasonable time. No error is shown in this connection in view of testimony to the effect that in March, 1936, at the time of the transactions with Mr. Hall, the defendant's agent reaffirmed the list price of $8,000, and under the general verdict of the jury we must consider the same as true. In that event we see no merit in the contention that the brokerage contract was not performed within a reasonable time. It is probably true that under the evidence the jury might have found for plaintiff that in November, 1934, the defendant listed the land at the fixed price of $8,000, and found for defendant that in March, 1936, it did not reaffirm the price, but no special interrogatories were submitted, and therefore both such contested questions of fact must be said to have been resolved in plaintiff's favor.

The defendant further contends that the trial court should have sustained the demurrer to plaintiff's evidence. What we have already said seems sufficient to dispose of subdivision "a" of the proposition urged thereunder. Under subdivision "b" thereof it is said:

"Furthermore, the plaintiff in this case cannot recover for the reason that the proposed purchaser imposed additional conditions upon the sale to him not agreed to by the defendant and varied the terms thereof, under the plaintiff's own evidence."

The testimony shows that the prospective purchaser requested an abstract of title showing merchantable title and time to examine the same, and defendant says there is no testimony to show that it had ever agreed to those conditions.

These are usual and customary requirements in transactions of this nature, and the evidence here shows that in the other transactions between these same parties this had been accepted and done as a matter of course. In this case the defendant did not object at the time because of these requirements, and under the facts here it is only logical to presume that these requirements were well within defendant's contract.

The defendant further complains that certain instructions given concerning waiver of the requirement to furnish a written contract or to present personally the prospective purchaser to the seller was error as not within the pleadings and proof. There is some doubt as to whether waiver is clearly pleaded, but the same was clearly shown by the evidence, and no cause appears herein for not treating the petition as amended accordingly. We are unable to determine from this record any probability of the defendant's having been surprised or in any way misled or prejudiced in respect to that action.

We have examined the instructions which were given and those refused, and find no substantial error therein.

The judgment is affirmed.

BAYLESS, C. J., and RILEY, HURST, and DAVISON, JJ., concur.