## FIRST TRUST JOINT STOCK LAND BANK OF CHICAGO, ILL., v. FERGUSON.

No. 29560. May 7, 1940.

Rehearing Denied July 16, 1940.

*104 P. 2d 427.*

A. H. Ferguson, of Durant, for plaintiff in error.

Utterback & Utterback, of Durant, for defendant in error.

PER CURIAM. On the 15th day of September, 1938, plaintiff filed his action against the defendant alleging that by written agreement the defendant listed certain real property for sale by the plaintiff as broker; that plaintiff was to receive a commission of 5 per cent. for the sale of said real property; that in pursuance of said agreement plaintiff obtained a contract for sale from J. T. Halbrooks, and that the defendant failed to convey said real property as per its former agreement with the plaintiff. Plaintiff prayed judgment for $255.

The defendant answered denying each and every material allegation except those admitted. It admitted that on April 15, 1937, J. T. Halbrooks agreed in writing to purchase 170 acres of land known as the Williams farm; that on April 23, 1937, defendant accepted said offer; that said Halbrooks agreed to pay $1,300 in cash and the balance of the $5,100 in deferred payments, the same to constitute a lien on the said premises; that the said Halbrooks failed to carry out said agreement, and having died, his heirs refused to carry out said agreement; that plaintiff was to be paid the commission only on a consummation of the trade; that the defendant has always been ready to convey on compliance with the terms of said written agreement. A reply was filed denying the allegations generally. A verdict for $255 was returned by the jury and judgment rendered for plaintiff thereon, whereupon the defendant has perfected its appeal by petition in error with case-made attached and assigns five specifications of error in its brief.

The defendant first alleges that under the issues presented there is no competent evidence to sustain the verdict of the jury and judgment of the trial court entered thereon. While it is asserted by the plaintiff that this court has many times held that a real estate agent authorized to sell land for another for a stated price for certain compensation has earned his commission when he produces a purchaser ready, willing, and financially able to purchase the land upon the terms and conditions agreed upon.

Under the issues as presented by the pleadings and evidence, we are of the opinion that this question alone is de-

terminative of the cause. Plaintiff has cited in support of his contention: Carson v. Vance, 35 Okla. 584, 130 P. 946; McKemie v. Cochran, 170 Okla. 17, 38 P. 2d 566; Equitable Life Assur. Soc. U. S. v. Home, 184 Okla. 542, 88 P. 2d 887; Campbell v. Thomas-Godfrey Land & Loan Co., 81 Okla. 201, 197 P. 452; J. B. Stone Realty Co. v. Schlingman, 161 Okla. 80, 17 P. 2d 499. That the rule announced in Carson v. Vance, supra, and related authorities is the law of this jurisdiction can no longer be questioned, but we think the rule to be applied in the case at bar is announced in Williams v. Seminole Oil & Gas Co., 171 Okla. 406, 43 P. 2d 59, wherein the court stated:

"The right of a real estate broker to recover commission for his services depends upon the contract between the seller and the broker.

"Where the contract is in writing and provides that the seller will pay the broker a stipulated commission on a sale at a stipulated price when the sale is completed, the broker is not entitled to recover where the sale was not consummated in the absence of a showing that the failure of the purchaser to complete the transaction was caused by the fault of the seller."

At the time of the execution of said contract the said V. R. Ferguson signed and executed a written agreement with reference to his commission which is as follows:

"First Trust Joint Stock Land Bank of Chicago,

"1201 Tower Petroleum Building,
"Dallas, Texas.

"Gentlemen:

"If the proposition of J. T. Halbrook to buy the 170 acres known as 2940-Williams farm located in Johnston County, State of Okla. is accepted by the First-Trust Joint Stock Land Bank of Chicago, *and the sale is finally consummated,* I agree to accept $255.00 as my commission for services rendered, said amount to be paid to me upon delivery of Deed to purchaser, and payment of the consideration therefor to the seller.
"V. R. Ferguson." (C-m.19)

The record discloses that the plaintiff entered into a written contract with the defendant to sell the premises involved for a stipulated price of $5,100; that in pursuance of this written agreement plaintiff furnished a written contract from the purchaser, Halbrooks, who paid $500 to bind the contract and agreed to pay $800 on January 1, 1938, and the balance in deferred payments with a real estate mortgage on the premises. The defendant agreed to give the purchaser possession by removing the tenant. There was some disagreement about the removal of the tenant and sometime about the 6th of January, 1938, plaintiff, together with a representative of the defendant bank, went to the premises and thereafter it was determined that the parties should meet in the plaintiff's office on January 8, 1938. On the morning of January 8, 1938, plaintiff received a letter from a representative of the bank, Mr. Skaggs, dated January 7, 1938, in which it stated that the said representative would not be able to meet the plaintiff and the said Halbrooks on January 8th because he had to be in Fort Worth, Tex., and Wilson, another representative of the bank, who also had authority to close the deal, had to be in Clarksville, Tex. Halbrooks and his wife appeared at plaintiff's office on the morning of January 8, 1938, and were told of the letter received from Skaggs, and sometime thereafter left for home. There is a conflict in the testimony as to whether the representative Skaggs went with the plaintiff prior to January 8th to the premises where Halbrooks was living, and there is also a conflict as to whether or not the said Skaggs and the plaintiff and Halbrooks had an agreement to meet in the office of plaintiff on January 8, 1938. The testimony offered by the defendant did tend to disclose that its representative Wilson went to the premises occupied by Halbrooks for the purpose of completing the deal sometime about January 6, 1938, and that Halbrooks was not at home; while the plaintiff testified that he, the plaintiff, and Skaggs and Halbrooks met on January 6th or thereabouts and agreed to meet in plaintiff's office on January 8, 1938, and close the deal. The letter dated January 7, 1938, above referred

to states that the representative Skaggs, the writer of the letter, had been advised by Wilson that Halbrooks was to be in plaintiff's office on January 8, 1938, and further stated that he, Skaggs, could not be there because he had to be in Fort Worth, Tex., and Wilson could not be there because he had to be in Clarksville, Tex. It must be assumed that the jury believed the plaintiff's evidence offered on this phase of the issue, as a general verdict is a finding of every issue relied upon and presented by competent evidence in behalf of the plaintiff.

The question to be determined, therefore, is, Can it be said that the failure to consummate the trade is due to the fault of the seller? The only circumstances that point to the fault of the seller are: (1) An agreement to sell on January 1, 1938, on payment of $800; (2) failure to surrender possession on January 1st due to the tenant being on the premises; (3) an agreement to meet on Saturday January 8, 1938, at the office of the plaintiff and a failure on the part of the defendant to be there, but such failure being reasonably explained. There is evidence that thereafter the intended purchaser, Halbrooks, and the defendant bank and the plaintiff were all attempting to complete the transaction. A loan had been applied for through the federal agency after January 8, 1938. The record is not clear as to whether or not plaintiff went out to the premises occupied by Halbrooks after January 8, 1938. While the purchaser, Halbrooks, was attempting to negotiate the loan so that he could complete the transaction, he died on March 31, 1938, and the deal was never consummated. Defendant still alleges a readiness to sell on the terms and conditions of the contract with J. H. Halbrooks, even to the heirs of the said Halbrooks. Under the facts and circumstances shown by the record, we are of the opinion that this evidence falls short of the requirements in Williams v. Seminole Oil & Gas Co., supra. There was no competent evidence to sustain the finding and verdict of the jury and the judgment entered thereon. The cause is reversed and remanded, with directions to vacate the judgment entered for the plaintiff and to enter judgment for the defendant.

WELCH, V. C. J., and OSBORN, HURST, DAVISON, and DANNER, JJ., concur.