## AETNA LIFE INS. CO. v. HOME.

### No. 30765. Nov. 30, 1943.

Rehearing Denied Feb. 1, 1944.

*145 P. 2d 189.*

C. B. Holtzendorff, of Claremore, and W. D. Calkins, of Oklahoma City, for plaintiff in error.

H. Tom Kight and H. Tom Kight, Jr., both of Claremore, for defendant in error.

GIBSON, V.C.J. This is an action by a real estate broker against his principal to recover a commission. Verdict and judgment were for plaintiff, and defendant appeals.

Plaintiff based his action on an alleged oral contract entered into with certain local agents of the defendant corporation whereby plaintiff was to receive a commission of $325 for procuring a purchaser for a 340-acre farm known as the Drake place. The petition states the usual cause of action upon the ordinary oral contract of employment arising from the mere listing of property for sale with a broker at specified prices and commissions, and the performance of services thereunder by the broker in procuring a purchaser ready, willing, and able to buy except for refusal of defendant, for no just cause, to consummate the deal.

Defendant denied the oral contract, and took the position that plaintiff was operating under a special written contract containing definite conditions upon which the commission of $325 was to be paid, and alleged that those conditions failed.

Among the errors assigned is the action of the court in overruling defendant's demurrer to all the evidence, and denying its request for a peremptory instruction.

The evidence refutes plaintiff's testimony that he was operating under an oral contract. When he was engaged as an agent to sell defendant's property, he received a written statement containing the terms and conditions upon which commissions were to be paid. He seems to have considered the document of no legal effect since he failed to sign the same as requested by defendant. But, nevertheless, it was the written memorandum of employment, and it had not been waived or altered in any way. By its own terms it was an integral part of a commission agreement later signed by plaintiff and hereafter mentioned.

Said instrument provided, among other things, that if the broker furnished a prospective purchaser "and we then close the deal within 90 days, you will be entitled to receive a commission of 5% of the purchase price up to Three Thousand & no/100 Dollars, and 2½% on all amounts above Three Thousand & no/100 Dollars, or as otherwise provided in the commission statement which must accompany each purchase application."

A commission statement was submitted along with the purchase application. It was signed by plaintiff, and contained the following provisions:

"No. RE 4425-S Name of Farm Drake—

1 County Wagoner State Oklahoma

"The undersigned submits herewith proposal of purchase of the above numbered property belonging to the Aetna Life Insurance Company of Hartford, Connecticut, by Clarence P. Bradfield and Lucie K. Bradfield of Route 1, Ames, Oklahoma for a consideration of $10,-000.00, said offer being subject to the acceptance of said Company. . . .

"If this proposal of purchase is accepted by the Company and contract of sale is signed by the buyer and the Company, and the purchaser accepts the title, I agree to accept as full commission for the sale the sum of $325.00. Such commission to the amount aforesaid will be paid when, as and if adequate cash is received by the Company from the prospective purchaser on account of the agreed purchase price, and with the further understanding and agreement that in no event will the remittance to the agent be in excess of 25% of any one payment received by your Company from the purchaser. If the contract of sale is terminated by reason of default in fulfilling same, all right to further payments on account of commission shall forthwith cease."

This commission statement constituted a clear and concise agreement on the part of the plaintiff to accept $325 commission subject to the conditions therein contained, and he was bound thereby.

The commission statement specifically provided that the offer or purchase application was subject to acceptance by defendant company, and the written list of farms for sale as sent to plaintiff contained the statement, "All deals are subject to the acceptance of the Home Office of the Aetna Life, at Hartford, Conn."

The purchase application with which the commission statement was submitted to defendant at its home office contained certain pertinent provisions which were wholly in line and consistent with the provisions of the employment contract, and not unknown to plaintiff. They read as follows:

"This application does not constitute an agreement binding upon the Company until finally accepted by an officer of the Company at its Home Office in Hartford, Connecticut.

"In case this application shall not be accepted, it is understood that the payment made on account shall be refunded to me."

The evidence shows that the Drake farm consisted of 500 acres in one body. In the listing submitted to plaintiff it was set out in two separate tracts, both under No. 4425-S, Drake; one containing 340 acres at a price of $10,000; the other containing 160 acres at a price of $5,000. The purchase application covered only the 340 acres.

It is further shown that defendant refused the application for the reason that all improvements were located on the 340 acres, and to sell off the portion with all improvements would lessen defendant's chances to sell the remainder unimproved.

Defendant took the position that by reason of the terms of the special contract of employment it had a right to reject the purchase application for any reason it saw fit. The application, it is said, was merely a proposal to purchase submitted for defendant's acceptance or rejection, and the offer was rejected, all of which was agreed to by plaintiff as a special condition of his employment.

Plaintiff relied on the general rule applied in the ordinary brokerage case to the effect that where the broker furnishes a purchaser ready, willing, and able to buy upon the terms and conditions proposed by the seller, such broker has earned his commission. Koch v. E. D. Smith Co., Inc., 170 Okla. 136, 39 P. 2d 18; Equitable Life Assurance Soc., etc., v. Home, 184 Okla. 542, 88 P. 2d 887.

It may be said that the rule cited covers this case in a broad, general way. But, aside from furnishing a purchaser ready, able, and willing to buy on the terms fixed by the seller, the question here is whether all the conditions upon which depended the payment of commission had transpired. Ordinarily, the plaintiff might have been entitled to commission in this case by furnishing such a purchaser at the price fixed by defendant, but there was a special contract to the contrary that imposed an extra condition, a condition that the offer be accepted by defendant at its home office. The rule stated in 9 C. J. 623, § 102, covers this case in a general way. It reads as follows:

"As a general rule, where a broker finds a customer able and willing to enter into a transaction on the terms proposed by the principal, he cannot, unless there is a special contract to the contrary, be deprived of his right to his commissions by reason of the transaction failing on account of some fault of the principal, such as by the principal refusing to complete the transaction."

It is within the right of the seller to make the payment of commission subject to his acceptance of an offer. And when he imposes such a condition, the broker is not entitled to any commission until he has secured an offer which his principal accepts. 9 C. J. 590. There the rule is expressed as follows:

"Where by the agreement between the broker and his employer no terms of sale or exchange are fixed or the broker is required to submit any offer or proposition received by him to his employer for his acceptance or rejection, the broker is not entitled to any commissions until he has secured an offer which his employer accepts."

In the broker's contract the seller may impose any conditions, arbitrary or otherwise, upon which the payment of commission shall be dependent. The performance of those conditions may rest entirely with the seller, and lie wholly without the power of the broker to perform, and where the transaction fails, nothing short of a willful or fraudulent act on the part of the seller in violation of his agreement will permit the broker to recover.

The right of a real estate broker to recover commission for his services depends upon the contract between the seller and the broker. Williams, Ex'x, v. Seminole County Oil & Gas Co., 171 Okla. 406, 43 P. 2d 59. In that case the court approved and applied the rule stated in Hinds v. Henry, 36 N. J. Law, 328, to a situation where, as here, the contingency upon which depended the payment of commission never transpired. The rule there quoted reads as follows:

"In an action for the payment of money on a contingency, the pleader must aver, and it must be proved, that the contingency has happened, or that performance was prevented by the other party by some willful or fraudulent act, in violation of his own undertaking, express or implied."

Here, plaintiff neither alleged nor attempted to prove that the action of defendant in refusing the offer was a willful or fraudulent act in violation of its undertaking. The contingencies imposed by the commission contract were clear and unambiguous. Plaintiff accepted those conditions. In order to recover, the burden was his to show by allegation and proof that the defendant by some arbitrary or fraudulent act prevented the contract from being fully carried out. This he did not do. The trial court therefore erred in submitting the case to the jury over defendant's request for an instructed verdict.

The judgment is reversed and the cause remanded, with direction to enter judgment for defendant.

OSBORN, BAYLESS, WELCH, and DAVISON, JJ., concur. CORN, C.J., and RILEY, HURST, and ARNOLD, JJ., dissent.

---

HURST, J. (dissenting). A complete understanding of the issues involved here requires a more detailed statement of some of the pertinent facts than is given in the majority opinion. Defendant, the owner of numerous pieces of real property which it desired to sell, compiled a printed circular, listing such properties and offering them for sale. These circulars, one of which was sent to plaintiff, a real estate broker, described each property separately, stated the sale price thereof, and also gave the amount of the approximate annual payment required to purchase the property under defendant's "29 year amortization plan." The two tracts here involved were described therein as follows:

"RE—4425-S Drake, 160 Acres - 8-1/2 miles N. W. of Wagoner. 120 acres good quality dark sandy loam soil in cultivation, 15 acres meadow, balance pasture. Unimproved except fences. On a mail route and convenient to grade and high schools. A good community of prairie farms. Under Oil and Gas Lease. $268.80 annually. $5,000.

"RE—4425-S Drake, 340 Acres - 7-1/2 miles northwest of Wagoner. Approximately 200 acres good quality dark loam soil in cultivation, balance pasture. 6-room frame house; frame barn, 36x60; poultry house, 14x20; rock and concrete celler; and 2 silos. Buildings are in good condition. House is wired for electricity. Adequately fenced and water. 1 mile to grade school and 1/2 mile from high school bus line. Good community. Producing gas wells on farm. $560 annually. $10,000."

After plaintiff had procured a purchaser for the second tract, above described, able and willing to purchase the same at the price named in the listing, defendant refused to consummate the sale unless the purchaser would also buy the first tract. It gave as its reason therefor that "it has been decided that it would not be advantageous to dispose of the improved portion of this Drake farm because then we would be confronted with the task of moving an unimproved and much less salable place."

Defendant, knowing at the time of preparing its printed offer whether it would be advantageous to sell the tracts separately, divided the farm into two tracts, listed each tract separately, stated the separate price of each, described the first tract as unimproved and the second tract as improved, and invited plaintiff to find purchasers therefor.

The real question in this case, not discussed in the majority opinion, is whether, by agreeing that "all deals are subject to the acceptance" of defendant and that plaintiff should receive his commission "if the proposal of purchase is accepted," the parties contemplated that defendant might arbitrarily refuse to accept a proposal made on the exact terms of the listing, simply because the owner changed its mind, and thus deprive plaintiff of his commission. I think it is reasonably clear that they did not so intend.

By the words "subject to acceptance" the parties meant that the defendant might reject the proposal for any reasonable cause, such, for example, as that the proposed purchaser was not an acceptable credit risk. They did not mean, however, that after plaintiff had procured a suitable purchaser, ready and able to buy on defendant's listed terms, defendant could refuse to accept the proposal, and thus deprive plaintiff of his commission, solely on the ground that it had changed its mind and did not, after all, desire to sell the property in the manner in which it had listed it. Such a construction is harsh, unreasonable, and unjust, and should, if possible, be avoided. Kansas City Bridge Co. v. Lindsay Bridge Co., 32 Okla. 31, 121 P. 639; 13 C. J. 540; 17 C. J. S. 739; 12 Am. Jur. 791.

I find no case from this or any other jurisdiction construing the phrase "subject to acceptance" in broker's contracts.

There are many cases, however, where the contract contained a stipulation that no commission was payable "if the sale for any reason is not consummated," or similar stipulations. By the great weight of authority the courts, in these cases, hold that such contracts do not contemplate an arbitrary refusal to sell on the part of the owner, and that if he does so refuse, or if the sale is prevented by his fault or some arbitrary act on his part, the commission is payable despite the fact that the sale was "not consummated." 8 Am. Jur. 1096; Restatement, Agency, vol. 2, p. 1043, comment e; Greenwald v. Rosen, 61 Misc. Rep. 260, 113 N. Y. S. 764; Alvord v. Cook, 174 Mass. 120, 54 N.E. 499; Rabinowitz v. North Texas Realty Co. (Tex. Civ. App.) 270 S. W. 579. We have recognized the converse of this rule. First Trust Joint Stock Land Bank of Chicago, Ill., v. Ferguson, 187 Okla. 48, 104 P. 2d 427; Williams v. Seminole Oil & Gas Co., 171 Okla. 406, 43 P. 2d 59; McComas v. Smith, 151 Okla. 193, 3 P. 2d 213. These authorities lay down the rule that the commission is not collectible unless the failure of the purchaser to complete the transaction was caused "by the *fault* of the seller."

The situations are analogous and the reasoning in the cited cases applies in construing the phrase "subject to acceptance."

The statement from Corpus Juris (9 C. J. 590), quoted in the majority opinion, is correct when properly understood, but has no application here. The cases cited in the footnote as sustaining the text are chiefly cases where the broker agreed to find a purchaser on terms "satisfactory" to the owner, or where the contract did not mention the terms of sale. Aside from these cases the footnote cites Goin v. Hess, 102 Iowa, 140, 71 N. W. 218; Berry v. Tweed, 93 Iowa, 296, 61 N. W. 858; and Sawyer v. Bowman, 91 Iowa, 717, 59 N. W. 27. In the Goin Case the contract provided that the owner's land was to be traded for other lands "subject to the approval of the owner." The owner refused to consummate the transaction on the

ground that the farm found by the broker was encumbered and unsatisfactory. In the Berry Case the owner authorized the broker to sell on "almost any terms to suit purchaser." In a prior case (Furst v. Tweed, 93 Iowa, 300, 61 N. W. 857) it had been decided that such language plainly implied that the terms were to be submitted to the owner, and that the owner had a right to reject the terms if unsatisfactory, and the court followed such decisions. And in the Sawyer Case the sale was abandoned with the consent of the broker. It will thus be seen that in the cited cases the owner did not state the exact terms on which he would sell but left them to be negotiated by the broker with the stipulation that they were to be subject to his approval. That situation is very different from one where, as here, the owner prescribes the exact terms on which he will sell, and after the broker has provided a purchaser on such terms, the owner refuses to complete the sale on the ground that he should not have made such offer in the first place. Furthermore, the footnote to the Corpus Juris citation points out that even in cases where the contract provides that the broker shall negotiate a "satisfactory lease" the lessor may not arbitrarily refuse to accept a negotiated lease and thereby deprive a broker of his commission.

I do not mean to say that a principal may not reserve the right to arbitrarily reject any proposal submitted. I do say, however, that before a contract should be given such a harsh construction, the provision should appear in plain and unmistakable language, and that under the authorities above cited such right is not reserved by the mere provision that the proposal is to be "subject to acceptance." In this case defendant prepared the printed matter in which such terms appear, and any uncertainty in the interpretation of the terms should be resolved against it.

In the final paragraph of the opinion the majority seems to accept this rule, but state that "in order to recover the burden was his (plaintiff's) to show by

allegation and proof that the defendant by some arbitrary or fraudulent act prevented the contract from being fully carried out. This he did not do." I am unable to concur in the conclusion of the majority that the refusal of defendant to accept the proposal made in exact accordance with the terms of its offer was not arbitrary, and that the failure to complete the transaction was not caused by its fault.

I therefore respectfully dissent.

RILEY and ARNOLD, JJ., concur in this dissent.