Jack STEIN, an individual, Appellant,

v.

Dan W. JAMES, Ruby G. James, George W. James, and Danny R. Hightower, Appellees.

No. 7337.

United States Court of Appeals Tenth Circuit.

March 25, 1964.

Rehearing Denied April 27, 1964.

Bert Barefoot, Jr., and Edward H. Moler, Oklahoma City, Okl., for appellant.

Coleman Hayes, Oklahoma City, Okl. (Monnet, Hayes, Bullis, Grubb & Thomp-

son, Oklahoma City, Okl., with him on the brief), for appellees.

Before LEWIS and SETH, Circuit Judges, and KERR, District Judge.

SETH, Circuit Judge.

The plaintiff, a real estate agent, brought this action to recover a real estate broker's commission arising from a transaction which was not consummated. Plaintiff, who is the appellant here, alleged that he had produced a buyer who was ready, willing and able to purchase appellees' capital stock of the James Hotel Company which was the operator and owner of two hotels and other property in Oklahoma City. The action was tried to the court without a jury, and judgment was entered for the defendants. The plaintiff-appellant has taken this appeal.

This case centers about two letters, both dated October 19, 1961, and written to appellant by the representative of appellees. One outlined the appellees' proposal of sale in some detail. The other, introduced as plaintiff's Exhibit No. 31, concerned the payment of the fee to the appellant, and was accepted by his letter of November 11, 1961. Before discussing the significance of these two letters, it is necessary to describe briefly certain of the events which preceded them.

The appellant had placed an advertisement in a New York paper in November 1960, in which it was stated in part that: "Mr. Stein represents large financial interests ready to purchase for All Cash Hotels * * *." This ad was answered by one of the appellees who was president of the James Hotel Company, and from this start, correspondence, conferences, and conversations ensued. The appellant came to Oklahoma City for discussions of the general terms of a sale. No conclusions were reached and negotiations were terminated for a time. The appellant later renewed them, and there was further correspondence. Appellant then revealed the name of the prospective buyer, to whom he referred as "his client." An appellee then wrote

several letters to this Mr. Weissberg. In these letters dated April 6 and May 5, 1961, it was stated that appellees wanted four million dollars net to them, "with any applicable commissions payable by the purchaser," and "we would much prefer making a net sale to you, with you making whatever arrangements you want with Mr. Stein." It was also there mentioned that appellant had suggested a price of $4,300,000, and the writer concluded that Mr. Stein therefore expected a $300,000 commission. Appellees received no reply from Mr. Weissberg, but heard instead further from appellant to whom the letters had been given. Appellant objected to this direct communication with his "client." Further discussions were had, including a visit by the appellant to Oklahoma City. Then appellees' representative wrote the two letters of October 19, 1961, to appellant. In one of these letters a suggested price of $4,150,000 was given, and in the second letter of the same day reference was made to a fee of $150,000 to be paid to the appellant if a sale was consummated upon terms satisfactory to the appellees. On November 8, 1961, the appellant wrote to the appellees, explaining that the prospective purchaser had been otherwise occupied but that he and the prospective purchaser would soon be able to come to Oklahoma City. On November 11, 1961, the appellant again wrote to the appellees, stating that Mr. Weissberg "authorized me to accept the terms as outlined" in the first letter of October 19, 1961. In this letter appellant also accepted the proposal of fees contained in appellees' second letter of the same date. A few days later, the appellees' representative wrote a letter to the appellant in which he referred to a letter he stated he had written on November 8, advising the appellant that the appellees did not wish to sell the hotel properties, and also stated that appellees had decided not to sell and so the sale was not consummated.

The trial court found that the fee letter of October 19, 1961, and the acceptance thereof by the appellant constituted

a contract between them for the payment of a fee conditioned upon the consummation of a sale. The court further found that it was not intended by the parties to create a principal-agent relationship between them or to make the appellant a broker of the appellees. The court also found that the price referred to in the first letter of October 19, 1961, of $4,150,000 and the second letter referring to a fee of $150,000 were consistent with the previous letters from the appellees wherein it was stated that the sellers wished to receive a net amount of $4,000,000 for the properties.

An examination of the record shows that there was substantial evidence that the appellant was not the agent of appellees prior to the letters of October 19, 1961. The appellant does not concede this fact, but argues that even if it be so, the letters of October 19, 1961, either changed this relationship and made appellant the appellees' agent, or confirmed such an agency previously existing. The trial court found that by October 12, 1961, he was acting as the agent of Mr. Weissberg, and the evidence supports this finding. The appellees argue that if this letter and its acceptance constituted an agreement, it was a contract to pay a fee, but did not create a principal-agent relationship between the appellant and the appellees. In this connection, the appellees place some stress on the portion of the appellant's letter of November 11, 1961, wherein he accepted the commission proposal of the appellees. This portion of the appellant's letter states in part: "* * * I met with Mr. Weissberg at his office, and after he reviewed your letter of commital [sic] dated October 19, 1961, he authorized me to accept the terms as outlined in said letter." Appellees urge that this quotation from the exhibit indicates that appellant in accepting was still acting as agent for the prospective purchaser, or in any event was not acting as an agent of the appellees.

The record shows that at all times the appellees recognized that the appellant was a real estate agent and further recognized that he expected to be paid a fee. As mentioned above, certain letters from the appellees suggest a net price to be received by them for the hotels and indicate that if such price was received, that is all they were interested in. Other letters from the appellees suggest that the prospective buyer pay the fee. There was no correspondence from Mr. Weissberg nor were there conversations between him and the appellees or their attorney. The prospective buyer never came to Oklahoma City nor sent any representative to examine the hotels or the other real estate included in the proposals. All reactions of the prospective purchaser were as related to the appellees by the appellant.

The letters of October 19, 1961, must be construed and examined in the light of all the above facts. The letters from appellees discussing who was to pay the commission and the net price are important as is appellant's advertisement that he represented certain prospective buyers of hotels, his reference to this prospective purchaser as a client, and his general course of conduct. As indicated, appellees recognized that a fee to appellant would be involved in the transaction. This was followed by the letters of October 19, 1961, wherein it was stated in part: "In connection with the memorandum that I have given you concerning the possible sale of the James Hotel Company, Mr. James is willing, if a sale is consummated upon terms satisfactory to him, to pay you a real estate commission of $150,000.00, the initial payment * * *." This proposal was accepted by the appellant, and there was thereby created a contract as the trial court found. We agree also with the trial court that this contract was one to pay a fee upon a certain specified condition, but it was not a contract of agency. Appellant's course of conduct before and after the letter indicates no change followed the letter. The appellant had not been the agent of appellees, and did not become so by the contract. There is nothing in the record to show any inten-

tion by the parties to change their relationship to each other. There is an abundance of cases from Oklahoma courts and arising in Oklahoma which define the consequences of an agency for the sale of real estate, including Equitable Life Assur. Soc'y of United States v. Home, 184 Okl. 542, 88 P.2d 887; Operators' Oil Co. v. Barbre, 65 F.2d 857 (10th Cir.); Smith v. Gibraltar Oil Co., 254 F.2d 518 (10th Cir.), and others, but these are not here applicable. Appellant cities First Trust Joint Stock Land Bank of Chicago, Ill. v. Ferguson, 187 Okl. 48, 104 P.2d 427; Williams v. Seminole County Oil & Gas Co., 171 Okl. 406, 43 P.2d 59, and Taylor v. Cobb, 202 Okl. 371, 214 P.2d 233, on the power of the principal to withdraw or reject for his own reasons, but again it is not necessary to reach this point because no agency was established.

■■ This is primarily a substantial evidence case. No unusual standards are shown to exist in Oklahoma law as to the fundamental rules of agency. To prevail, the appellant had to establish the principal-agency relationship, and had the burden of proof. In his brief reliance is placed on the letter of October 19, 1961, to establish the agency. This letter, together with its acceptance, does establish a contract, a conditional obligation to pay to appellant a fee. This is an express agreement to that extent, but it is nothing more than that. An agreement to pay a fee is not enough to prove agency, and this is all that appellant established. It is certainly an important element for the broker in a typical transaction, but this one is not typical. Appellant did not establish by additional evidence that he was an agent of appellees. The evidence in fact is to the contrary. There was no express agency agreement, and nothing in the acts or words of the appellees from which an agency could be implied or presumed. There being none, and the conditions of the fee agreement not being fulfilled, appellant must fail. The Oklahoma Supreme Court has held that a conditional contract of this nature may be made with a broker. In Aetna Life Ins. Co. v. Home, 193 Okl. 478, 145 P.2d 189, the court said: "In the broker's contract the seller may impose any conditions, arbitrary or otherwise, upon which the payment of commission shall be dependent." There the seller rejected an application to purchase. The Oklahoma court in Kirk v. Ezell, 136 Okl. 290, 277 P. 939, and in Hibbard v. Ford, 55 Okl. 563, 155 P. 510, likewise found that no agency existed in the facts then before them.

Thus that the appellant may have produced a purchaser who was ready, willing and able to purchase the property therefore did not meet the requirements of such a contract since there was no principal-agency relationship to support such a doctrine. There is nothing to show that the parties were not free to enter into such an agreement. Appellees could so agree to pay appellant a fee, but not thereby to engage him as an agent, although he was a real estate agent. Such was the nature of the contract and the relationship it created.

There is no error of law and the findings of fact are supported by the evidence.

Affirmed.